# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WORLD CLEANERS, INC., <br>    Plaintiff, <br><br> v. <br><br> CENTRAL NATIONAL INSURANCE COMPANY OF OMAHA, now known as OAKWOOD INSURANCE COMPANY, <br>    Defendant. | CV 17-4731 DSF (RAOx) <br><br><br> FINDINGS OF FACT AND CONCLUSIONS OF LAW |
| AND RELATED COUNTERCLAIMS AND THIRD-PARTY CLAIM | |

    In this case, Plaintiff World Cleaners, Inc. has sued Central National Insurance Company of Omaha, now known as Oakwood Insurance Company, for a declaration that Oakwood is and was required to defend World in a suit by the Department of Toxic Substances Control. Oakwood has brought counterclaims against World as well as a third-party claim against Hartford Fire Insurance Company for equitable contribution.

The matter came before the Court on October 5, 2022, for a court trial on written evidentiary submissions.[1] The Court now finds as follows:

## FINDINGS OF FACT[2]

1. The parties submitted Joint Stipulated Facts (Dkt. 199) and the Court adopts and incorporates those Joint Stipulated Facts into these Findings. Unless otherwise noted, the defined terms used in these Findings are the same as those defined in the Joint Stipulated Facts.

2. World has not established that an "occurrence" as defined by the Oakwood Policy[3] in question occurred within the Oakwood Policy Period of September 1, 1984 to September 1, 1985.

3. A potential "occurrence" took place on the World Property when a valve was left open and perchloroethylene spilled on the floor of World's facility.

4. This spill is the only colorable claim by World that a relevant "occurrence" took place during the Oakwood Policy Period.

5. However, World has not established that this spill happened during the Oakwood Policy Period.

6. World's principal, Brian Sher testified at deposition, after having his recollection refreshed, that the spill happened during the

---

[1] The Court has ruled on evidentiary objections in a separate order.

[2] Any finding of fact deemed to be a conclusion of law is incorporated into the conclusions of law. Any conclusion of law deemed to be a finding of fact is incorporated into the findings of fact. All factual findings are by a preponderance of the evidence unless otherwise noted.

[3] The "Oakwood Policy" is defined as the "CN/Oakwood Policy" in the Joint Stipulated Facts.

        1984 Olympic Games, which took place in Los Angeles. Ex. 201 at 109:22-111:2.[4]

7. The Court finds this testimony not to be credible.

8. In two separate depositions, Sher made clear that he did not know what year the spill occurred. Ex. 201 at 95:13-96:8; Ex. 202 at 90:12-91:1.

9. It was only after having his memory refreshed by a letter from World's counsel to Oakwood's counsel that he placed the spill during the 1984 Games. Ex. 201 at 109:22-111:2.

10. World's counsel has argued that Sher was harassed during the depositions and this is the reason that he failed to remember the timing of the spill. The Court has reviewed the relevant portions of the deposition transcripts and finds that this is not a reasonable or persuasive description of what happened during the depositions. See generally Ex. 201, 202.

11. The spill was also not mentioned by World in several responses to Oakwood and DTSC regarding potential occurrences under the Oakwood Policy and releases on the World Property. See Ex. 025, 028.[5] This further undercuts the credibility of Sher's testimony that the spill happened during the 1984 Olympic Games or during the Oakwood Policy Period more generally.

---

[4] The Court takes judicial notice of the fact that the 1984 Olympic Games took place between July 28 and August 12, 1984. See https://olympics.com/en/olympic-games/los-angeles-1984 (International Olympic Committee website). Sher was clear that the spill took place during the Games, not after. Ex. 201 at 110:18-21 ("Q: " – after the 1984 Olympics; A: During the '84 Olympics.; Q: During the Olympics?; A: Right."). While Oakwood has not argued this point, the alleged spill would appear to have occurred outside of the Oakwood Policy Period even if Sher's testimony were credited.

[5] World does cite a spill from a drum falling in 1984, but it appears that World no longer contends that any such event ever took place.

12. There is no corroborating evidence to support Sher's testimony regarding the timing of the spill. The sole evidence of timing is Sher's inconsistent testimony.

13. Because there is insufficient evidence that the spill happened within the Oakwood Policy Period, the Court makes no finding whether the spill would have been considered "sudden and accidental" within the meaning of the Oakwood Policy.

14. As the Court previously found in its order regarding the motions for summary judgment, Oakwood has failed to provide evidence to support its assertion that Oakwood relied on false statements by World's lawyers when it decided to provide a defense to the DTSC suit. Dkt. 170 at 12-15.

15. The DTSC Suit presented a potential for coverage under the Oakwood Policy when it was filed. The complaint in the DTSC Suit alleged that World began utilizing PCE and other hazardous chemicals from around 1981 and that during World's operation there were releases of hazardous substances into the ground. Ex. 22, ¶¶ 15, 17. These allegations presented the potential for liability based on events that occurred during the Oakwood Policy Period.

16. The environmental consulting costs paid by Hartford during the DTSC investigation were necessary for any litigation defense against the DTSC regarding contamination of the Property.

17. Therefore, those consulting costs would have been borne by Oakwood during the subsequent DTSC Suit had they not already been paid by Hartford.

18. Oakwood's assertion that the settlement amount of $850,000 paid by Hartford to World would have completely remediated the World Property and eliminated the need for the DTSC suit against World is not supported by the evidence in the record.

    a. Oakwood argues that based on the current estimate of $971,000 for remediation, $850,000 would have been

4

    sufficient for remediation in 2013 when the Hartford/World Settlement took place. See Oakwood Trial Brief at 25.

  b. However, this is only conjecture that is not supported by actual evidence, such as engineering estimates of remediation costs made in or around 2013.

  c. The assertion is also not supported by evidence from DTSC to indicate that DTSC would have been satisfied with remediation that could have been completed with $850,000 in 2013.

## CONCLUSIONS OF LAW

1. There is no dispute that for World to be entitled to indemnity from Oakwood under the Oakwood Policy there must have been a relevant "occurrence" as defined by the Oakwood Policy during the Oakwood Policy Period.

2. An "occurrence" is defined in the Oakwood Policy as "an accident, including continuous or repeated exposure to conditions, which results in … property damage … neither expected nor intended from the standpoint of the Insured." Stipulated Facts ¶ 12.

3. Because World has not established that a relevant "occurrence" happened within the Oakwood Policy Period, World is not entitled to indemnification from Oakwood or to any continued defense.

4. However, Oakwood previously had a duty to defend World against the DTSC Suit.

5. "An insurer must defend its insured against claims that create a *potential* for indemnity under the policy." Scottsdale Ins. Co. v. MV Transp., 36 Cal. 4th 643, 654 (2005). The insurer's "duty to indemnify runs to claims that are actually covered," while the "duty to defend runs to claims that are merely potentially covered, in light of facts alleged or otherwise disclosed." Buss v. Superior Court, 16 Cal. 4th 35, 46 (1997). "The determination

5

whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy." Montrose Chem. Corp. v. Superior Court, 6 Cal. 4th 287, 295 (1993). In order to trigger an insurer's duty to defend, "the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*." Id. at 300 (emphasis in original).

6. "Once the defense duty attaches, the insurer is obligated to defend against all of the claims involved in the action, both covered and noncovered, until the insurer produces undeniable evidence supporting an allocation of a specific portion of the defense costs to a noncovered claim." Horace Mann Ins. Co. v. Barbara B., 4 Cal. 4th 1076, 1081 (1993). Insurers are required to defend when unresolved factual disputes could give rise to liability under the policy, unless the insurer can demonstrate it is entitled to judgment as a matter of law. Id. at 1083.

7. Oakwood was obligated to pay defense costs to World in the DTSC Suit because, given the allegations in the DTSC Suit, there was at least the potential for coverage under the Oakwood Policy when the claim was tendered and the defense was undertaken.

8. Oakwood is not entitled to reimbursement for defense costs paid before it became clear that there was no coverage under the Oakwood Policy. Buss v. Superior Ct., 16 Cal.4th 35 (1997).

9. As found in the Court's summary judgment order and repeated above, there is insufficient evidence that any alleged misrepresentations by World's counsel caused Oakwood to provide a defense or ultimately affected the potential for coverage under the Oakwood Policy.

10. The Court declines to impose the constructive trust for the remediation of the World Property requested by Oakwood.

    a. "A constructive trust may only be imposed where the following three conditions are satisfied: (1) the existence of

      a *res* (property or some interest in property); (2) the *right* of a complaining party to that res; and (3) some *wrongful* acquisition or detention of the res by another party who is not entitled to it." Burlesci v. Petersen, 68 Cal. App. 4th 1062, 1069 (1998) (emphasis in original).

    b. Oakwood argues that the $850,000 from Hartford to World should have been used by World to remediate the World Property but was improperly taken by Sher for personal use.

    c. This issue does not affect Oakwood given that the Court has found that Oakwood has no obligation to indemnify World for remediation of the World Property. In other words, Oakwood has not shown that it has any right or interest in either the $850,000 settlement amount or the World Property.

    d. Oakwood argues that had the $850,000 been used for remediation, the DTSC Suit would never have been filed and Oakwood's duty to defend would not have been triggered.

    e. Oakwood has not sufficiently substantiated this assertion with evidence.

    f. But even if the assertion were true, Oakwood has not connected the alleged harm to Oakwood to the imposition of a constructive trust for the benefit of remediating the World Property.

11. "Equitable indemnity applies in cases in which one party pays a debt for which another is primarily liable and which in equity and good conscience should have been paid by the latter party." United Servs. Auto. Ass'n v. Alaska Ins. Co., 94 Cal. App. 4th 638, 644-45 (2001) (internal quotation marks omitted).

    a. Oakwood has not established that Hartford acted inequitably when it settled with World. Specifically,

7

      Oakwood has not established any duty on the part of Hartford to structure the settlement with World to limit Oakwood's coverage exposure or to ensure that the $850,000 payment was used on remediation of the World Property.

   b. Because the Court finds that Oakwood has failed to support its assertion that use of the $850,000 on remediation would have prevented the DTSC Suit, there is an insufficient basis to order World or Sher to provide equitable indemnification or subrogation to Oakwood for the costs associated with the DTSC suit.

12. "In the insurance context, the right to contribution arises when several insurers are obligated to indemnify or defend the same loss or claim, and one insurer has paid more than its share of the loss or defended the action without any participation by the others. Where multiple insurance carriers insure the same insured and cover the same risk, each insurer has independent standing to assert a cause of action against its coinsurers for equitable contribution when it has undertaken the defense or indemnification of the common insured. Equitable contribution permits reimbursement to the insurer that paid on the loss for the excess it paid over its proportionate share of the obligation, on the theory that the debt it paid was equally and concurrently owed by the other insurers and should be shared by them pro rata in proportion to their respective coverage of the risk." Fireman's Fund Ins. Co. v. Maryland Cas. Co., 65 Cal. App. 4th 1279, 1293 (1998).

13. Oakwood is not entitled to equitable contribution from Hartford for defense costs because Hartford paid, if anything, more than its fair share of defense costs.

   a. While Hartford's costs were incurred during an investigative proceeding and Oakwood's were incurred during a later civil suit involving the same general subject

      matter, the significant sum paid by Hartford for environmental consulting work – approximately $1.8 million – should be included in the equitable analysis because those consulting costs would have been borne by Oakwood had they not been done during the investigative stage.

b. When the consulting costs are included in the analysis, Hartford contributed at least $1.8 million to the costs of defense that would have been required in defending the DTSC Suit while Oakwood only paid approximately $480,000 in total.

c. The Court finds that this allocation of defense costs is more than equitable to Oakwood and no equitable contribution from Hartford to Oakwood is appropriate.

## **DISPOSITION**

    In summary, the Court finds in favor of Oakwood with respect to World's declaratory relief claim against Oakwood, in favor of World with respect to Oakwood's counterclaims against World, and in favor of Hartford with respect to Oakwood's third-party claim against Hartford. Judgment will be entered consistent with these Findings.

Date: January 17, 2023

                                              Dale S. Fischer
                                              United States District Judge